**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

Case No.: 25-19316-SMG

NIBA DESIGNS, INC,
Chapter 11

Debtor-in-Possession.

_____/

**DEBTOR'S EXPEDITED MOTION**
**FOR CRAMDOWN UNDER SUBCHAPTER V PURSUANT TO 11 U.S.C. §1191(b)**
*Reason for Expedited Nature:*
*The Plan cannot get confirmed without the relief requested being granted*

NIBA DESIGNS, INC (the "Debtor") by and through undersigned counsel, and pursuant to 11 U.S.C. §1191(b) hereby files this *Motion for Cramdown*, and in support thereof states as follows:

1.     On August 13, 2025, the Debtor filed a voluntary petition under Chapter 11, Subchapter V of Title 11 of the United States Code (Dkt. No. 1).

2.     On November 11, 2025, the Debtor filed his *Chapter 11 Small Business Subchapter V Plan* (Dkt. No. 65).

3.     On November 25, 2025, the Court entered an order setting confirmation for January 13, 2026 and set related deadlines (Dkt. No. 67).

4.     The deadline to file ballots was December 30, 2025.

5.     Given the proximity of the confirmation hearing, this Motion should be considered jointly with the Plan, with the proposed cramdown relief granted through the resulting confirmation order.

6.     Pursuant to the Plan (i) Class 1 is the impaired secured claim of the Small Business Administration, and no ballots were cast; (ii) the IRS, Florida Department of Revenue,

California Franchise Tax Board, and New York Bureau of Workers Compensation hold priority tax claims and are unimpaired, therefore a ballot were not required; and (iii) claimants in Class 2 are impaired and entitled to vote.

7. Class 2 consists of thirteen (13) general unsecured claims in the total amount of $2,087,089.61, of which they will receive a 16.5% distribution. The holders of 2 claims in Class 2 voted; both were timely. The votes, as shown on the Ballot Tabulation are as follows:

| Ballot # | Class | Name of Creditor | Amount Scheduled or Claimed | Date Ballot Filed with Court | Accepts | Rejects | Should Be Allowed to vote; if no, why? |
|---|---|---|---|---|---|---|---|
| 1 (Dkt. No. 75) | 2 | FC Marketplace, LLC | $53,756.30 | 12/23/25 | | X | Yes |
| 2 (Dkt. No. 76) | 2 | American Express National Bank | $79,891.85 | 12/30/25 | X | | Yes |

8. As shown on the Ballot Tabulation, two (2) members of Class 2 voted: 1 of the ballots voted in favor of the Plan and 1 voted against confirmation. The total dollar amount of the 2 ballots is $133,648.15.  Of that number $79,891.85 or 59.77% of the total amount cast, voted for the Plan and $53,756.30 or 40.33% of the total amount cast, voted against the plan. Less than two-thirds of the dollar amount that voted, voted in favor of the Plan, and less than one half of the cast ballots were in favor, so consensual confirmation under section 1191(a) fails and the criteria set forth in section 1191(b) applies.

9. The requirements for plan confirmation under Subchapter V are outlined in Bankruptcy Code Section 1191(b)

10. Under this Section, a court will confirm a plan if it meets the requirements listed in Section 1129(a), except for paragraphs (8), (10) and (15). *In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 339 (Bankr. S.D. Fla. 2020). In addition, the court must determine that the

plan: (1) does not discriminate unfairly against any impaired, nonconsenting class; and (2) is fair and equitable regarding each class of impaired claims that has rejected the plan.

11.     The construction of the terms, "fair and equitable" require the Plan to provide : 1) that all projected disposal income of the Debtor received in the five year plan term will be applied to make payments under the plan section 1191 (c)(2)(A); 2) that there is a reasonable likelihood that the Debtor will be able to make all payments under the plan section 1191(c)(3)A)(ii); and 3) that the plan provides appropriate remedies section 1191(c)(3)(B).

12.     The Plan does not discriminate unfairly, and is fair and equitable in its treatment of the non-accepting class, Class 1 and Class 2, as set forth further below.

13.     The Plan does not discriminate unfairly in that all unsecured creditors are treated equally, each one receiving the same percentage of distribution. The Debtor seeks to cram down the non-voting Class 1 (Small Business Administration or "SBA"). The SBA holds a total claim of $1,930,772.21, of which $157,574.79 is a secured claim and the remaining $1,773,197.42 is an unsecured deficiency claim. To preserve the Debtor's operations and ensure sufficient cash flow to fund the Plan, the Debtor proposes to amortize the SBA's $157,574.79 secured portion over a 30-year term. This treatment satisfies the "fair and equitable" requirements of 11 U.S.C. § 1191(b) and applicable case law

14.     Under Section 1191(c)(1), a plan is fair and equitable to a secured class if it meets the requirements of Section 1129(b)(2)(A). This requires that the creditor (i) retain its lien to the extent of the allowed amount of such claim, and (ii) receive deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property. The Debtor's Plan complies with this strict standard. The SBA will retain its lien on the collateral and receive deferred cash payments with a present value equal to its $157,574.79 secured interest. The

extended 30-year amortization period is necessary to lower the monthly debt service, thereby freeing up "projected disposable income" to maintain business operations and pay other creditors.

15.     The viability of confirming a Subchapter V plan over the objection of a secured creditor was analyzed by the Bankruptcy Court for the Middle District of Florida in *In re Ellingsworth Residential Community Ass'n, Inc.*, 622 B.R. 255 (Bankr. M.D. Fla. 2020). In *Ellingsworth*, the court confirmed a Subchapter V plan, emphasizing that a plan is "fair and equitable" if it complies with the statutory requirements of lien retention and present value payments, even if the creditor objects to the modified terms. Specifically, the *Ellingsworth* court noted that Subchapter V was designed to streamline reorganization for small businesses. Following the reasoning in *Ellingsworth*, this Court should find that providing the SBA with a lien and the full present value of its secured claim over time satisfies the Code, regardless of the SBA's original loan terms. The 30-year term proposed by the Debtor is not a denial of the SBA's rights, but a necessary restructuring to ensure the Debtor does not liquidate.

16.     The Debtor's proposal to extend the SBA repayment term to 30 years is further supported by *In re Pearl Resources LLC*, 622 B.R. 236 (Bankr. S.D. Tex. 2020). In *Pearl Resources*, the court confirmed a Subchapter V plan that restructured debts to ensure feasibility, rejecting the notion that a debtor must liquidate assets immediately to satisfy creditors. The court in *Pearl* highlighted that the "fair and equitable" requirement under § 1191(b) includes a feasibility analysis where the debtor must show a reasonable likelihood of making payments. By extending the SBA secured term to 30 years, NIBA Designs, Inc. aligns its debt service with its actual income capabilities. As in *Pearl Resources*, where the court prioritized the debtor's ability to survive and make payments over time, the 30-year amortization here is the linchpin that makes the Plan feasible. It ensures that the Debtor has sufficient disposable income to pay operating

expenses and provide a return to unsecured creditors, rather than failing immediately due to an unserviceable short-term debt load.

17.    The Plan imposes a 30-year term on the SBA's secured claim not to avoid payment, but to ensure it. Without this extended term, the Debtor cannot sustain operations, and the SBA would likely recover significantly less in a forced liquidation. Because the Plan allows the SBA to retain its lien and receive the full present value of its secured claim, it is fair and equitable under § 1191(b) and consistent with the rulings in *Ellingsworth* and *Pearl Resources*.

18.    Under 11 U.S.C. § 1191(b), a Subchapter V plan can be confirmed over the objection of an impaired class, such as the unsecured creditors in Class 2, provided the plan does not "discriminate unfairly" and remains "fair and equitable". The "no unfair discrimination" prong is satisfied because all unsecured creditors within Class 2 are treated equally, with each receiving the same 16.5% distribution on their claims. This ensures that no single creditor or sub-group within the impaired class is targeted for less favorable treatment than others similarly situated, a fundamental requirement for a nonconsensual cramdown.

19.    The second prong of the "fair and equitable" requirement, codified in 11 U.S.C. § 1191(c)(2), mandates that the plan provide for the commitment of all projected disposable income received during the plan's term. For a corporate debtor, "disposable income" is defined as income that is not reasonably necessary for the payment of expenditures essential for the continued preservation and operation of the business. By structuring the plan to distribute all net earnings to creditors over a five-year period and under the plan up to 30 years to maintain and operate the business. The Debtor satisfies the statutory requirement that it is contributing its maximum financial capacity toward the satisfaction of its obligations, ensuring that no value is retained by equity holders unless creditors are paid as proposed.

20.    Feasibility serves as the third prong, requiring a "reasonable likelihood" that the

Debtor will be able to make all payments proposed under the plan pursuant to § 1191(c)(3)(A)(ii). To meet this standard, the Debtor has restructured its debt to align with its actual income capabilities, most notably by amortizing the Small Business Administration's secured claim over a 30-year term. This strategic extension of the repayment period is designed to lower monthly debt service obligations, thereby freeing up the necessary cash flow to sustain business operations while simultaneously providing the promised return to unsecured creditors.

21.     The final prong requires the plan to provide "appropriate remedies" under § 1191(c)(3)(B) to protect creditors in the event that the Debtor fails to make the mandated payments. This safeguard is a statutory prerequisite for nonconsensual confirmation, ensuring that the plan contains built-in mechanisms for creditor recourse if the reorganization does not proceed as projected. The Debtor will include default provisions in the confirmation order. By satisfying these four elements, non-discrimination, disposable income commitment, feasibility, and the provision of remedies, the Debtor seeks to demonstrate that the plan is legally sound and equitable despite the lack of unanimous creditor acceptance.

22.     The Debtor submits that the treatment provided in Class 1 and 2 is in satisfaction of all applicable requirements. Accordingly, Debtor respectfully requests this Court confirm the Plan subject to a cramdown of Class 1 and pursuant to Section 1191(b) of the Bankruptcy Code.

**WHEREFORE**, the Debtor respectfully requests that this Court (i) enter an order granting Debtor's cramdown of Class 1 of the Plan under Subchapter V pursuant to Section 1191(b) of the Code; (ii) enter an Order Confirming the Plan; (iii) and for any other relief that this Court deems just and appropriate.

Dated: January 7, 2026

**VAN HORN LAW GROUP, P.A.**
500 N.E. 4th Street, Suite 200
Fort Lauderdale, FL 33301
Telephone: (954) 765-3166
Facsimile: (954) 756-7103

By: /s/  **Chad Van Horn, Esq.**
    Chad Van Horn, Esq.
    Florida Bar No. 64500
    chad@cvhlawgroup.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent this 7th day of January 2026 to all parties registered through CM/ECF and as listed on this Court's mailing matrix.

Dated: January 7, 2026

**VAN HORN LAW GROUP, P.A.**
500 N.E. 4th Street, Suite 200
Fort Lauderdale, FL 33301
Telephone: (954) 765-3166
Facsimile: (954) 756-7103

By: /s/  **Chad Van Horn, Esq.**
    Chad Van Horn, Esq.
    Florida Bar No. 64500
    chad@cvhlawgroup.com